IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ESPRIT STONES PRIVATE LIMITED,   CASE NO: 6:19-cv-00637-CEM-LRH
A foreign business entity incorporated in India,

JURY TRIAL DEMANDED

        Plaintiff,

vs.

RIO STONE GROUP, INC.,
a Florida for-profit corporation,
BANK OF AMERICA, N.A.,

        Defendants.
_____/

**DEFENDANT'S, RIO STONE GROUP, INC'S., ANSWER ,
AFFIRMATIVE DEFENSES AND COUNTER-COMPLAINT**

Defendant, RIO STONE GROUP, INC ("RIO"), files its Answer, Affirmative Defenses and Countercomplaint and says:

**ANSWER**

RIO answers the correspondingly numbered paragraphs of the Complaint [Doc. 1] and says:

1. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

2. Admitted in part and denied in part. The principle place of business is admitted. The remainder of the allegation is denied.

3. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

4. Admitted in part and denied in part. RIO admits diversity but denies damages to ESPRIT.

1

5. Admitted.

6. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

7. Admitted in part and denied in part. Admitted that ESPRIT manufactures construction materials. Denied that ESPRIT produces natural quartz.

8. Admitted.

9. Admitted.

10. Admitted in part and denied in part. Admitted that RIO began purchasing man-made quartz from ESPRIT. Denied that RIO purchased natural quartz.

11. Admitted in part and denied in part. Admitted that RIO and ESPRIT representatives communicated in part via Whats App. The remaining allegation are denied.

12. Admitted in part and denied in part.

13. Denied.

14. Denied.

15. Denied.

16. Admitted in part and denied in part. Admitted RIO purchased materials from ESPRIT. Denied that materials were natural quartz. Denied that the terms of the purchase were established by or utilized the DAP arrangement.

17. Admitted.

18. Admitted that RIO directed ESPRIT to send documents to that bank. Denied that the documents evidence an agreed-to "documents against payment" arrangement between the parties.

19. Admitted in part and denied in part. Admitted that containers were shipped. Denied that the containers contained natural quartz. Denied that the attachments constitute evidence of the purchase terms.

20. Admit that the documents speak for themselves. Denied that the attachments constitute evidence of the purchase terms.

21. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

22. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

23. Admit that the documents speak for themselves. Denied that the attachments constitute evidence of the purchase terms as part of a Document Against Payment arrangement.

24. Admit that the documents speak for themselves. Denied that the attachments constitute evidence of the purchase terms.

25. Admit that the documents speak for themselves. Denied that the attachments constitute evidence of the purchase terms.

26. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

27. Admitted

28. Denied.

29. Admitted.

30. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

31. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

32. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

33. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

34. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

35. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

36. No response is required since the allegations of this paragraph are not directed toward RIO STONE. Alternatively, without knowledge and, therefore, denied.

37. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

38. No response is required since the allegations of this paragraph are not directed toward RIO. Alternatively, without knowledge and, therefore, denied.

39. Denied.

40. Denied.

41. Denied.

42. Without knowledge and, therefore, denied.

43. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

44. No response is required since the allegations of this paragraph are not directed toward RIO.

45. No response is required since the allegations of this paragraph are not directed toward RIO STONE.

46. No response is required since the allegations of this paragraph are not directed toward RIO STONE.

47. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

48. No response is required since the allegations of this paragraph are not directed toward RIO.

49. No response is required since the allegations of this paragraph are not directed toward RIO.

50. No response is required since the allegations of this paragraph are not directed toward RIO.

51. Admitted in part and denied in part.

52. No response is required since the allegations of this paragraph are not directed toward RIO.

53. No response is required since the allegations of this paragraph are not directed toward RIO.

54. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

55. Admitted in part and denied in part. Admitted that RIO and ESPRIT formed a joint venture contract. Denied that RIO and ESPRIT formed a contract through a course of business conduct.

56. Admitted in part and denied in part. Admitted that RIO and ESPRIT formed a joint venture contract. Denied that RIO and ESPRIT formed a contract through a course of business conduct or through the referenced exhibits.

57. Denied.

58. Denied.

59. Admitted.

60. Denied.

61. Denied.

62. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

63. Admitted.

64. Denied.

65. Denied.

66. Denied.

67. Denied.

68. Denied

69. Denied.

70. Denied.

71. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

72. Denied.

73. Admit that the documents speak for themselves. Denied that the attachments constitute evidence of the purchase terms.

74. Denied.

75. Admitted.

76. Denied.

77. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

78. Denied.

79. Denied.

80. Admitted.

81. Denied.

82. RIO realleges its answers to Paragraphs 1- 42 above as if fully set forth herein.

83. Denied.

84. Denied.

85. Denied.

86. Denied.

87. Denied.

## AFFIRMATIVE DEFENSES

Defendant, RIO STONE GROUP, INC ("RIO"), files its Affirmative Defenses and says:

**FIRST AFFIRMATIVE DEFENSE - FAILURE TO STATE A CLAIM**.  As to all claims, ESPRIT failed to state a cause of action as the alleged event of default.

**SECOND AFFIRMATIVE DEFENSE - UNCLEAN HANDS**.  RIO has unclean hands.  ESPRIT delivered non-conforming and damaged goods. Thereafter, ESPRIT agreed to reduced terms and credits in future shipments to induce RIO to continue to order product from ESPRIT.  ESPRIT never provided to RIO invoices with reduced terms and credits.

**THIRD AFFIRMATIVE DEFENSE – ANTICPATORY BREACH / EXCUSE OF PERFORMANCE**. ESPRIT committed an anticipatory breach by providing non-conforming and damaged product. Based on ESPRIT's prior breach, RIO's performance under the agreement was excused and tolled.

7

## COUNTER-COMPLAINT

Defendant/Counter-Plaintiff, RIO STONE GROUP, INC. ("RIO") sues Plaintiff/Counter-Defendant, ESPRIT STONES PRIVATE LIMITED ("ESPRIT STONES"), and says:

## PARTIES, VENUE AND JURISDICTION

1. RIO is a Florida for profit corporation with its principle place of business located at 3600 Silver Star Road, Orlando, FL 32808.

2. ESPRIT is a foreign international company with its principal place of business located in India.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332, diversity jurisdiction because the parties are citizens of different states and the amount in controversy exceeds $75,000.000 exclusive of attorney's fees, interest and cost.

4. Venue is proper in the Middle District because the cause of action arose within the district and Defendant is a resident of the district.

## FACTS

5. RIO and ESPRIT entered into negotiations for RIO to import man-made quartz from ESPRIT for retail sale in Florida and other United States' markets.

6. Representatives of RIO on or about February 2018 traveled to India to negotiate a joint venture with ESPRIT.

7. As a result of the negotiations, RIO and ESPRIT orally agreed to a joint venture where ESPRIT would provide to RIO all of RIO's requirements of man-made quartz in jumbo sheets to be delivered internationally through freight-shipped containers.

8. RIO and ESPRIT agreed that ESPRIT would ship three containers of product per week to the United States to RIO.

9. RIO was responsible for freight and tax charges on the shipping.

10. RIO and ESPRIT agreed that RIO would resale the product and establish a market for the product in the United States.

11. The anticipated retail sales of the product included an expected return of double the purchase price of the product.

12. The parties agreed that RIO would pre-pay for ten containers.

13. The terms of payment for every container subsequent to the first ten containers was that when containers arrived, RIO had sixty days to pay ESPRIT for the product.

14. In response to the agreement, RIO canceled or ceased its supply contracts for quartz products from China.

15. RIO agreed to purchase all of its man-made quartz from ESPRIT.

16. Because ESPRIT's factory was new and was in financial difficulty, RIO agreed to pre-pay for the initial ten containers of product and paid in excess of $200,00.00.

17. ESPRIT shipped the ten pre-paid containers.

18. RIO received bills of lading from its banking institution allowing RIO to accept delivery of the product.

19. Upon receiving and inspecting the product, RIO learned that the product was non-conforming and damaged and came from separate unmatching lots making them unsellable at the retail rate because the various jumbo slabs were damaged and were from mismatched separate lots.

20. The condition of the product caused the product to be unmarketable at the retail or price of the product, thereby requiring it to be sold at greatly reduced prices in the marketplace.

21. RIO advised ESPRIT of the non-conforming and damaged nature of the product.

22. ESPRIT acknowledged the non-conforming and damaged goods.

23. ESPRIT consented to selling the product at reduced rates and providing RIO credits against future invoices.

24. RIO sold the damaged and non-conforming goods for prices far below their retail value had the product been undamaged and of matching lots.

25. During on or about June, 2018 ESPRIT shipped an additional 6 containers without RIO providing pre-payment.

26. RIO received bills of lading from its banking institution allowing it to accept delivery of the shipment.

27. The second shipment also contained non-conforming and damaged thereby grossly affecting its retail market value.

28. RIO has been required to sell the additional containers at a substantial reduction to try cover the costs of acquisition and lost profits.

29. RIO never received promised invoices granting it credits for the pre-paid containers of damaged and non-conforming goods.

30. RIO suffered damages in the form freight charges, taxes and lost profits as a result of receiving non-conforming and damaged goods.

## COUNT I
## (BREACH OF CONTRACT AGAINST ESPIRIT)

31. This is a state law action for damages which exceed $75,000.00 exclusive of attorney's fees, interest and costs.

32. RIO realleges paragraphs 1 through 30 as if fully re-alleged and set forth herein.

33. RIO performed its obligations under the construction contract.

34. ESPRIT breached the contract by failing to provide conforming undamaged goods and by failing to provide agreed upon credits.

35. As a result of ESPRIT's breaches, RIO suffered damages.

36. All conditions precedent to this action have occurred, have been excused or have been waived.

WHEREFORE, RIO demands judgment for damages, interest and costs against ESPRIT.

## COUNT II
## (UNJUST ENRICHMENT AGAINST ESPIRIT)

37. This an action in state law for damages which exceed $75,000.00 exclusive of attorney's fees, interest and costs.

38. RIO realleges paragraphs 1 through 30 as if fully re-alleged and set forth herein.

39. RIO paid money to ESPRIT the amount of $200,000.00 in exchange for construction goods of (ten containers) allegedly valued in excess of $400,000.00 and $50,000.00 in freight and taxes.

40. ESPRIT accepted the money.

41. ESPIRIT provided non-conforming and damaged goods.

42. RIO did not provide the funds gratuitously.

43. ESPRIT knew that the funds provided by RIO were not gratuitous.

44. ESPRIT has been unjustly enriched in an amount in excess of $75,000.00.

WHEREFORE, RIO demands judgment for damages, interest and costs against ESPRIT.

## COUNT III
## (BREACH OF COVENANT OF GOOD
## FAITH AND FAIR DEALING AGAINST ESPRIT)

45. This an action in state law for damages which exceed $75,000.00 exclusive of attorney's fees, interest and costs.

46. RIO realleges paragraphs 1 through 30 as if fully re-alleged and set forth herein.

47. ESPRIT had a contractual duty / covenant to protect the reasonable expectations of the contracting parties in light of their express agreement.

48. Application of the covenant of good faith and fair dealing to ESPRIT's' contractual duties to RIO will not contravene the express terms of the parties' oral contract.

49. ESPRIT's delivery of nonconforming damaged goods is an accompanying breach of the express terms of the oral agreement/joint venture.

50. ESPRIT had a good faith duty to provide conforming undamaged goods.

51. ESPRIT breached its duty of good faith and fair dealing to perform under the contract.

52. RIO suffered damages as a result of ESPRIT's breach of the contracts and its duty of good faith and fair dealing.

WHEREFORE, RIO demands judgment for damages, interest and costs against ESPRIT.

## DEAMD FOR JURY TRIAL

Defendant Counter-Plaintiff demand trial by jury on all issues so triable.

                                        Respectfully submitted,

                                        */s/ Alex Finch*

                                        Alex Finch, Esquire
                                        Fla. Bar No.: 949220
                                        P.O. Box 915096

Longwood, FL 32791
Telephone: (321) 765-4973
Facsimile: (321) 765-4983
Email: afinch@gmail.com
Secondary Email:afinchlaw@aol.com

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 30th day of May, 2019 a true and correct copy of the foregoing has been filed with the Clerk of the Court of the U.S. District Court via CM/ECF. I further certify that the foregoing document and the notice of electronic filing by first class mail to the following non-CM-ECF participants: N/A.

*/s/ Alex Finch*
_____
Alex Finch, Esquire
Fla. Bar No.: 949220
P.O. Box 915096
Longwood, FL 32791
Telephone: (321) 765-4973
Facsimile: (321) 765-4983
Email: afinch@gmail.com
Secondary Email:afinchlaw@aol.com